IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAYLOR A. RHODES,

                Plaintiff,                Case No. 3:04 CV 7457

    -vs-

                                          MEMORANDUM OPINION

ROBERT KHAN, et al.,

                Defendants.

KATZ, J.

This matter is before the Court on the motion of Defendants Robert Khan and 4NCorp. to dismiss (Doc. No. 9). Plaintiff has filed a response (Doc. No. 11). Defendants have filed a Reply (Doc. No. 12). The Court has jurisdiction under 28 U.S.C. § 1332(a). For the reasons stated below, Defendants' Motion to Dismiss is granted. Additionally, Plaintiff's claims against Defendant Exchange Traded Derivatives, AG are dismissed for failure to prosecute.

## BACKGROUND

The Plaintiff, Taylor A. Rhodes, alleges Defendant Robert Khan is either full or part owner of Defendant Exchange Traded Derivatives, AG ("ETD"), a foreign corporation on which Plaintiff has not yet effected service, and the full owner of Defendant 4NCorp. Rhodes alleges Khan and 4NCorp.

breached two oral contracts (one later reduced to writing), and seeks recovery of $240,800 in compensatory damages and $2,000,000 in punitive damages. Khan filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The Court later granted Khan's *Nunc Pro Tunc* motion to include 4NCorp. in the original Motion to Dismiss.

The first contract Rhodes sues upon was described in the Complaint as an oral agreement whereby Rhodes would provide Khan and ETC $50,000 to fund a lawsuit seeking to recover 750,000 shares of Unitrend stock in exchange for 150,000 of the shares recovered. This agreement was later reduced to writing and signed by both Rhodes and Khan (Doc. No. 1, Ex. A). Rhodes provided $50,000 to ETD and Khan to fund the lawsuit, but ETD settled the suit out of court and Rhodes did not receive the 150,000 shares he expected.

Rhodes alleges that the second oral contract involved an arrangement pursuant to which money provided by Rhodes to Khan would be invested through ETD in international hedge funds in which U.S. citizens like Rhodes could not legally invest due to federal securities regulations. Rhodes alleges that he gave Khan $211,000 as a "loan" to invest in these hedge funds, but that neither Khan nor ETD invested this money in the hedge funds. Subsequently, ETD returned $20,200 to Rhodes. Rhodes claims Khan and ETD still owe him $190,800 from this transaction, in addition to the $50,000 from the first contract, for total compensatory damages of $240,800.

Rhodes has set forth eleven claims in his Complaint, including: (1) breach of the first oral contract; (2) fraud relating to the first oral contract; (3) breach of the second oral contract; (4) fraud relating to the second oral contract; (5) fraudulent inducement into signing a written contract; (6) unjust enrichment as to the written contract; (7) unjust enrichment as to the first oral contract; (8) unjust

enrichment as to the second oral contract; (9) conspiracy; (10) principal's liability for actions of an agent; (11) conversion and wrongful detention of property.

## DISCUSSION

*A. Motion to Dismiss Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. In scrutinizing the Complaint, the Court is required to accept the allegations stated in the Complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), while viewing the Complaint in a light most favorable to the Plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the Plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80(1957); *Westlake, supra,* at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2004).

*B. First Contract*

Rhodes is barred from recovering on the first oral contract because his participation in the contract and surrounding events functioned as champerty and maintenance. "'Maintenance' is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case. 'Champerty' is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues."

*Rancman v. Interim Settlement Funding Corp.,* 789 N.E.2d 217, 219 (Ohio 2003). Contracts tainted by champerty and maintenance are void and courts will not enforce them. *Id.* at 221.

Rhodes had no relation to the lawsuit between ETD and Unitrend other than providing funds to move the suit forward. Rhodes provided these funds only as consideration for receiving a portion of the proceeds of the settlement of the lawsuit. Furthermore, Rhodes had no bona fide interest in the lawsuit by ETD against Unitrend. Rhodes' interest in the suit was only in financial gain from the advances he gave Khan and ETD. It is explicit from Rhodes' first claim for relief that he understood his "loan" was to be used to fund the lawsuit. Although Rhodes claims in Count Seven of the Complaint that the first contract is tainted by champerty and maintenance, he asserts it is only pled in the alternative to his other claims; however, he incorporates paragraphs eight through twelve, which clearly describe the transaction in a way that is consistent with champerty and maintenance, into each of his claims. Thus, Rhodes' attempted champerty and maintenance bar him from any recovery on the first contract.

*C. Second Contract*

Rhodes cannot recover on the second oral contract because its purpose was illegal. It is well established that plaintiffs may not recover on illegal contracts. *Kahn v. Walton,* 20 N.E. 203, 210 (Ohio 1889); *Langer v. Langer,* 704 N.E.2d 275, 279 (Ohio Ct. App. 1997). Indeed, courts leave parties to an illegal contract where they are found; this supports the public policy of discouraging parties from entering into illegal contracts. *Cont'l Wall Paper Co. v. Louis Voight & Sons Co.,* 212 U.S. 227, 263, 29 S.Ct. 280, 292-93, 53 L. Ed. 486 (1909); *Kahn,* 20 N.E. at 210. Additionally, equity only provides relief to those with clean hands. In fact, whether an action is brought in equity or at law, "neither party to an illegal contract will be aided by the court, whether to enforce it or to set it aside. If the contract is

4

illegal, affirmative relief against it will not be granted, at law or in equity, unless the contract remains executory or unless the parties are considered not in equal fault . . . .'" *St. Louis, Vandalia & Terre Haute R.R. Co. v. Terre Haute & Indianapolis R.R. Co.,* 145 U.S. 393, 407, 12 S. Ct. 953, 957, 36 L. Ed. 748 (1892); *see also United States v. Farrell,* 606 F.2d 1341, 1348-49 (D.C. Cir. 1979) (quoting *St. Louis R.R.*).

The Complaint alleges that the hedge funds into which Rhodes sought to invest through ETD were not a legal investment for a U.S. citizen under federal securities laws. Rhodes admits in his third claim for relief that he intentionally sought out Khan and ETD to invest his $211,000 in these off-limits funds. (Doc. No. 1, at 4). Thus, Rhodes willfully sought to circumvent federal securities laws by entering into an oral contract with Khan and ETD to invest in these hedge funds. Reading the Complaint such that all facts alleged therein are taken as true, Rhodes' admission bars his recovery. Fed. R. Civ. P. 12(b)(6). As with the first contract, Rhodes' argument that he pleads, in Count Eight, the illegality of the second contract in the alternative to his other claims fails; his Count Three assertion that the purpose of the second contract was to evade federal securities laws is incorporated into every relevant count of the Complaint. Consequently, Rhodes may not look to the Court to enforce or otherwise provide relief for damages arising from an illegal contract of his own making. Rhodes' complicity in the illegal contract from which he now seeks relief bars not only his legal claims but also his equitable claims.

Rhodes is barred from recovery by the nature of the illegal contracts which he entered into and failed to rescind or abandon. The Complaint alleges in each count that, as to each of the respective contracts, Rhodes accepted the Defendants' offers and performed his obligations by paying $50,000 and $211,000, respectively, to Defendants. The contracts were therefore not executory. Rhodes did not

5

rescind or abandon his participation in either contract. Rather, Rhodes claims to have fulfilled his role and that the various breaches lie with Khan, ETD, and 4NCorp. Thus, Rhodes is barred from recovery under the facts that he pled, which indicate that he was aware of the illegal nature of the contracts and still willingly participated in them.

Rhodes' claim that if he is not found equally at fault he should be allowed to recover fails as well. The case Rhodes cites to, *Reinhard v. Columbus,* 31 N.E. 35, 38 (Ohio 1892), is distinguishable because there was an element of duress which allowed the plaintiff to recover in *Reinhard* that is lacking here. In *Reinhard,* the plaintiff was coerced by police officers into paying a bribe to avoid jail. *Id.* The court allowed the plaintiff in *Reinhard* to recover his bribe money because of the disproportionate blameworthiness of the police officers and the coercive nature of the transaction. *Id.* at 38-39. The Complaint in the instant case depicts Rhodes as a voluntary participant in the two oral contracts. Rhodes indicates that he understood at the outset that the benefit of using ETD to invest in international hedge funds was to circumvent U.S. securities laws, and likewise understood the nature of the first contract. Therefore, Rhodes was not fraudulently induced into either contract. When, as here, parties are equally at fault, no legal recovery will be allowed either party. *Spalding v. Bank of Muskingum*, 12 Ohio 544, 548 (1843).

*D. Failure to Prosecute*

The Court granted Plaintiff an extension of time until June 7, 2005 to effect service on Defendant Exchange Traded Derivatives, AG. (Doc. No. 20). Despite Plaintiff's awareness of the June 7 deadline, Plaintiff has not completed service or requested another extension. The Court therefore finds that dismissal of Plaintiff's claims against ETD for failure to prosecute is appropriate. *See Link v. Wabash R.*

*Co.*, 370 U.S. 626, 630-32, 82 S. Ct. 1386, 1388-89, 8 L. Ed. 2d 734 (1962) ("The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. . . . [W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting.").

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (Doc. No. 9) is granted. Plaintiff's claims against Defendant Exchange Traded Derivatives, AG are dismissed for failure to prosecute.

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    SENIOR U. S. DISTRICT JUDGE